IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ENDEL WILLIAMS
1012 Pearl Street
Racine, Wisconsin 53403,

       Plaintiff,

CIVIL ACTION NO. 18 CV 1232

v.

Jury Trial Demanded

CITY OF RACINE
730 Washington Avenue
Racine, Wisconsin 53403,

       Defendant.

## COMPLAINT

NOW COMES the Plaintiff, Endel Williams, by and through his attorneys, McDonald & Kloth, LLC, and as and for his cause of action against the Defendant, City of Racine, alleges and shows to the court as follows:

### NATURE OF T HE ACTION

This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Americans with Disabilities Act of 1990 ("ADA"), as amended, to correct unlawful employment practices on the basis of race, disability, and retaliation, and to provide appropriate relief to the Plaintiff who was adversely affected by such practices.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is proper pursuant to 28 USC §1331. This action is authorized and instituted pursuant to Section 621 of the ADA, 42 U.S.C. § 12101 et seq., and Sections 703 and 704 Title VII, 42 USC §2000e-2 et seq.

2. Venue is proper in this Court pursuant to 28 USC §1391(b) and (c). The employment practices alleged to be unlawful were and are being committed within the jurisdiction of

the United States District Court for the Eastern District of Wisconsin, and the employment records relevant to such practices are maintained and administered in the Eastern District of Wisconsin.

## PARTIES

3. The Plaintiff, Endel Williams ("Williams"), is an adult resident of the State of Wisconsin with a residence located at 1012 Pearl Street, Racine, Wisconsin 53403.

4. The Defendant, City of Racine (the "City"), is and was at all times material to this cause of action, a political subdivision organized under the laws of the State of Wisconsin having a principal place of business located at 730 Washington Avenue, Racine, WI 53403.

## STATEMENT OF CLAIMS

5. Williams became employed by the City within the Water Utility Department as a Utility Construction Worker on February 5, 2007.

6. Williams's race is African American.

7. Williams performed his job as a Utility Construction Worker satisfactorily throughout his employment with the City.

8. During his employment with the City, Williams became aware that his supervisor, Mark Carr ("Carr"), had made racially derogatory remarks about him including, but not limited to, referring to Williams as a "Nigger" and the "Mayor's Token Nigger."

9. On or about August 20, 2015, the City's General Manager, Keith Haas ("Haas") disciplined Williams for allegedly being insubordinate to Carr.

10. Williams objected to and disputed the disciplinary action.

11. On or about August 27, 2015, Williams lodged an internal complaint with the City alleging that the City had discriminated against him and harassed him based upon his race.

12. On September 15, 2015, Williams made Haas aware that Carr had referred to Williams as the "Mayor's Token Nigger;" that Carr has referred to other African Americans in the City's Water Utility Department as "Niggers;" and that Carr had made other derogatory comments about African Americans in the workplace.

13. On or about January 8, 2016, the City subjected Williams to unwarranted disciplinary action. Williams objected to and disputed the disciplinary action.

14. Williams filed a Charge with the U.S. Equal Employment Opportunity Commission on January 22, 2016 alleging that the City had violated Title VII by discriminating against him and harassing him based upon race, and retaliating against him for complaining about discrimination and harassment in the workplace.

15. The City subjected Williams to discrimination, harassment, and retaliation following his January 22, 2016 EEOC Charge including, but not limited to, isolating Williams from his coworkers, requiring Williams to perform the least desirable work, restricting Williams's ability to learn new functions and duties within the department, restrict Williams's promotional opportunities, checking-up on Williams with Williams's coworkers, and denying Williams the opportunity to work overtime, among other things.

16. In July, 2016, Williams sustained an injury to his right shoulder while working for the City. Williams was examined by medical professionals and released to work with restrictions.

17. In August, 2016, medical professionals diagnosed Williams with a shoulder labral tear.

18. On or about August 30, 2016, Williams underwent surgery to repair his damaged right shoulder.

19. Williams was released to work with restrictions shortly after the surgery.

20. Williams performed light duty work for the City for a period of time following his return to work.

21. Williams later was released to return to work in his position as a Utility Construction Worker.

22. Immediately after being released to return to work as a Utility Construction Worker, Carr directed Williams to clean the inside of a basin which required Williams to climb a vertical ladder.

23. Williams could not use his right arm to climb the ladder due to the right shoulder injury, and made his supervisor aware of his limitation.

24. On September 18, 2017, Williams's physician placed him on a permanent restriction of "No climbing vertical ladders with Right arm."

25. Williams possesses a disability, as he has physical impairment of his right shoulder that substantially limits one or more major life activities.

26. On information and belief, the City perceived Williams as possessing a disability.

27. Williams is required to climb a vertical ladder in his Utility Construction Worker position only when cleaning the basins, which occurs approximately three (3) weeks each year.

28. Williams requested a reasonable accommodation from the City such that he be permitted to abstain from cleaning the basins.

29. Abstaining from cleaning the basins would not pose an undue hardship on the City.

30. The City denied Williams's request for the reasonable accommodation.

31. On September 20, 2017, the City issued a memorandum prohibiting Williams from performing any further work with the City, and placed Williams on paid administrative leave, effective September 21, 2017.

32. Williams responded to the City's September 20, 2017 memorandum, stating that his "restrictions DOES NOT PROHIBIT me from performing the daily duties of the job."

33. Williams's response further states that he believed the City's actions in placing him on administrative leave were "retaliatory" and done to "further hinder his employment because of [him] raising concern about the discriminatory treatment that [he'd] received."

34. The City has maintained that it does not have any sedentary work for Williams to perform since placing him on administrative leave.

35. On information and belief, there has been ample sedentary work for Williams to perform at the City between September 20, 2017 and the present date.

36. Williams remains on paid administrative leave as of the filing of this Complaint.

37. Williams is able to return to work performing all duties associated with his position of Utility Construction Worker with a reasonable accommodation.

38. Williams has lost and continues to lose overtime pay as a result of the City's refusal to return him to work in his position of Utility Construction Worker.

39. Williams has sustained mental injuries as a result of the City's conduct alleged herein.

40. On September 25, 2017, the U.S. Equal Employment Opportunity Commission issued a Determination finding that there is "reasonable cause to believe that there is a violation of Title VII."

41. In February, 2018, the U.S. Equal Employment Opportunity Commission issued a Determination finding that there is "reasonable cause to believe that there are violations of the [ADA] and Title VII."

42. All conditions precedent for filing this lawsuit have been fulfilled, as Williams received a Right to Sue Letter from the U.S. Department of Justice dated May 16, 2018.

43. Williams asserts that the City has discriminated against him and harassed him because of his race in violation of Title VII.

44. Williams asserts that the City has retaliated against him for objecting to discrimination and harassment based on race, in violation of Title VII.

45. Williams asserts that the City has discriminated against him and harassed him because of his disability in violation of the ADA.

46. Williams asserts that the City has retaliated against him for objecting to discrimination based on his disability, in violation of the ADA.

47. The effect of the practices complained of in the foregoing paragraphs has been to deprive Williams of equal employment opportunities and otherwise adversely affect his status as an employee because of his race, disability, opposition to unlawful activity, and engagement in statutorily protected activity.

48. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

49. The unlawful employment practices complained of in the foregoing paragraphs were done with reckless indifference to Williams's federally protected rights.

## **PRAYER FOR RELIEF**

A. Grant a permanent injunction against the City and its officers, assigns and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of race, disability, or opposition to conduct made unlawful by Title VII and the ADA, and engagement in statutorily protected activity.

B. Order the City to institute and carry out policies, practices and programs which provide equal employment opportunities for all races and persons with disabilities, all persons who oppose conduct made unlawful by Title VII and the ADA, and all persons who engage in statutorily protected activity, and which eradicate the effects of its past and present unlawful employment practices.

C. Order the City to make whole Williams by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order the City to make whole Williams by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the foregoing paragraphs in amounts to be determined at trial.

E. Order the City to make whole Williams by providing compensation for past and future nonpecuinary losses, including, but not limited to, emotional pain, suffering, inconvenience and mental anguish resulting from the unlawful practices complained of in the foregoing paragraphs in amounts to be determined at trial.

F. Order the City to compensate Williams for the attorneys' fees and costs he's incurred as a result of brining this action.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMANDED

The Plaintiff, Endel Williams, requests a jury trial on all questions of fact raised by this complaint.

Dated on this 10th day of August, 2018.

                                  **McDonald & Kloth, LLC**
                                  Attorneys for ENDEL WILLIAMS

By: s/Shannon D. McDonald
      Shannon D. McDonald
      WI State Bar No. 1036954
      McDonald & Kloth, LLC
      1818 N. Farwell Ave.
      Milwaukee, WI 53202
      Direct: (414) 403-2161
      Office: (414) 395-8774
      Fax:   (414) 395-8773
      sdm@themklaw.com